## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

ARK GBST, LTD., a Bahamas corporate entity,

      Plaintiff,

v.

O&M HALYARD, INC., a Virginia corporation,

      Defendant.

_____/

Case No. _1:21-cv-22730_____

**JURY TRIAL REQUESTED**

## COMPLAINT

Plaintiff, Ark GBST, Ltd. ("Ark" or "Plaintiff") sues Defendant, O&M Halyard, Inc. ("Halyard") for its deceptive, oppressive, immoral, and unconscionable malfeasance that resulted in Ark suffering millions of dollars in damages. In support, Plaintiff states as follows:

## INTRODUCTION

Motivated by greed and armed with false promises, Halyard fraudulently induced Ark into entering into certain purchase order contracts. Halyard then breached these contracts, and committed other acts of malfeasance resulting in a domino effect that ultimately caused collateral damage to multiple parties, including Ark.

Halyard is a multi-national conglomerate that, among other businesses, operates as provider of health care products, including personal protective equipment ("PPE"), such as surgical-grade face masks, gowns, and gloves.

Ark is a far smaller company, primarily involved in the purchase and resale of PPE. Halyard and Ark began discussing large purchase orders for PPE and other products that Ark was sourcing for its client, LHP Pharma ("Pharma"). Halyard knew of Pharma, was aware of its business relationship with Ark, and was aware that Ark was purchasing PPE from Halyard to then resell the PPE to Pharma.

1

Based upon Halyard's promises, Ark placed two multimillion dollar PPE purchase orders with Halyard.  To ensure that Ark would not seek alternative vendors to fulfill these large purchase orders, Halyard repeatedly made multiple misrepresentations to Ark.  Most importantly, Halyard falsely represented to Ark that the purchase orders would be fulfilled, given priority, and delivered on time.

In exchange for these false promises, Halyard demanded and extracted multiple "fees" from Ark as a guarantee that Ark's purchase orders would be fulfilled and given priority.  Seizing on Covid-19 supply chain concerns, Halyard threatened Ark that without these fee payments, there was no guarantee that Ark's purchase orders would be fulfilled.  Fearing that the purchase orders would be cancelled and risking a default on its obligations to its clients, Ark made the fee payments to Halyard, which fees Halyard gladly accepted.

Ark voiced its concerns about Halyard's business practices to Halyard executives, but Halyard ignored Ark.  In the end, Halyard did not perform, did not deliver the PPE, did not give Ark's purchase orders priority, and has still, to this day, never fulfilled the purchase orders.  All the while, Halyard retained the fee payments from Ark.

As a result of Halyard's misdeeds, Ark has suffered substantial damages, including, without limitation, lost profits, the complete loss of its business relationship with Pharma.  Ark therefore seeks to recoup these damages, which exceed $150,000,000.00.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1332 based upon the amount in controversy exceeds $75,000.00 and there is complete diversity of citizenship among the parties:

  a.  Ark is a foreign corporate entity formed and/or incorporated in the Commonwealth of the Bahamas and it conducts business in the state of Florida;

and

    b.  Halyard is a corporate entity incorporated in the Commonwealth of Virginia and it conducts business in the state of Florida.

2.     This Court has personal jurisdiction over Halyard on the grounds that Halyard conducts substantial and not isolated business activities in this judicial district and as such, it has purposefully availed itself to the laws and benefits of this judicial district.

3.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and/or (2) because a substantial part of the events giving rise to the claims occurred within this judicial district.

## STATEMENT OF THE FACTS

    a.  *The Relationship Between the Parties*.

4.     Halyard is a multi-national conglomerate and is leading provider of health care products, including PPE, such as surgical-grade face masks, gowns, and gloves.

5.     Ark is a distribution company, involved in the purchase and resale of PPE.

6.     Brian Sperber ("Sperber") is Ark's marketing director and was the primary point of contact between Ark and Halyard.

7.     At all relevant times, Ark was an authorized distributor of medical supplies produced by Halyard.

    b.  *The First Purchase Order: Halyard's Deceptive Practices Begin*.

8.     In November 2019, Halyard and Ark began discussing large purchase orders for PPE and other products that Ark placed on behalf of its clients.

9.     On or about December 9, 2019, Sperber communicated with Halyard via telephone.

10.    On that telephone call, Halyard demanded that Ark pay a $25,000.00 "fee" to Halyard.

11.     Halyard told Ark that if Ark did not pay the fee, Halyard could not guarantee fulfillment of Ark's purchase orders.

12.     On December 10, 2019, at Halyard's direction, and under duress and out of fear that any future purchase orders that were being discussed would not be fulfilled, Ark wired $25,000.00 as directed by Halyard.  *See* **Exhibit A**, a true and correct copy of a December 2019 bank account statement evidencing the $25,000 wire.

13.     But Halyard was not satisfied—it continued to pressure and extort monies from Ark under the guise that these additional "fees" would secure fulfillment of Ark's purchase orders, and prioritize their delivery.

14.     On December 16, 2019, at an in-person meeting in the Bahamas between Oved Franco, Ark's president ("Franco"), one of Halyard's executives, Ricardo Echevarria ("Echevarria") demanded another $500.00 fee—in cash—to gamble at a local casino.

15.     Echevarria threatened that if this fee was not paid, Halyard would not fulfill any purchase orders.  Franco then gave Echevarria the $500.00 fee.

16.     After receiving $25,500.00 from Ark in fees, Halyard continued to pressure Ark to place large purchase orders for PPE, and gave assurances that those orders would be fulfilled with priority.

17.     On February 13, 2020, Ark e-mailed a purchase order for N95 face masks that totaled $7,621,900.00 (the "February Purchase Order").  *See* **Composite Exhibit B**, a true and correct copy of the February 13, 2020 e-mail from Ark to Halyard and the February 13 Purchase Order.

18.     That same day, Ark (through Sperber) met with several Halyard executives and traveled with them from Boca Raton, Florida to Halyard's Alpharetta, Georgia offices by private jet, which Ark had chartered specifically for this trip.

19.     Several Halyard executives provided Sperber with an office tour, including Halyard's "mask war room" which depicted all of Halyard's mask purchase orders and fulfillment schedule.  While in that room, Halyard represented to Ark that the February Purchase Order would be "put on the board."

20.     Even though the February Purchase Order had been e-mailed to Halyard, Ark also personally hand-delivered it to Halyard in Halyard's Alpharetta office, which Halyard accepted and confirmed.

21.     Fulfillment of the February Purchase Order was due on February 18, 2020[1].  *See id.*

22.     On February 14, 2020, Halyard e-mailed Ark and represented that the February Purchase Order would be fulfilled within the next two weeks.  *See* **Exhibit C**, a true and correct copy of the February 14, 2020 e-mail from Halyard to Ark.

23.     Despite the due date listed on the February Purchase Order, Ark accepted and relied on Halyard's representations that the February Purchase Order would be fulfilled within the next two weeks, no later than February 28, 2020.

24.     However, Halyard's representation was false—the February Purchase Order was not fulfilled by February 28, 2020 as promised.

25.     Nonetheless, Ark submitted the payments that were due to Halyard for the February Purchase Order.

26.     After accepting these payments, Halyard continued to string Ark along, reassuring Ark that the February Purchase Order would be fulfilled. These representations deterred Ark from

---

[1] The February 13 Purchase Order contains an inadvertent typographical error stating that the delivery date was February 18, 2019, rather than 2020.

seeking an alternative supplier to fulfill its purchase order with Halyard, and delivering the PPE to Pharma.

27.     On April 2, 2020, Halyard reassured Ark that it was able to accept additional purchase orders and asked Ark to place additional orders.  This representation and request was made by Halyard to induce Ark into placing additional purchase orders so that Halyard's Latin American ("LATAM") division could increase its sales numbers to meet its annual quotas.

28.     That same day, Halyard continued to represent that the February Purchase Order would be fulfilled, that Halyard understood the urgency of the need to fulfill the February Purchase Order, and advised Ark that it would be imminently shipping out several items from the February Purchase Order.  *See* **Exhibit D**, a true and correct copy of an April 2, 2020 e-mail from Halyard to Ark.

29.     On April 6, 2020, Halyard demanded that Ark wire an additional $30,000.00 "fee" and stressed that if the funds were not provided, the February Purchase Order would not be fulfilled.

30.     More specifically, Halyard represented that the $30,000.00 fee would be used to pay parties that would ensure fulfillment of the purchase orders.  Halyard also represented to Ark that Halyard's PPE inventory (limited due to Covid-19) would be directed to "favored distributors" – i.e., ones that agreed to pay these fees.

31.     Halyard even created an invoice for this "fee".

32.     On April 8, 2020, Ark wired the $30,000.00 fee as directed by Halyard.

33.     On April 9, 2020, after receiving the $30,000 fee, Halyard continued its pattern of deception and false promises, claiming to Ark that the February Purchase Order would be imminently fulfilled: "*[Y]ou will be receiving face mask, gloves and some apparel, either this week or the following. The rest of the products, we are doing are best to have it ready within the next*

*couple of weeks.*"  *See* **Exhibit E**, a true and correct copy of an April 9, 2020 e-mail from Halyard to Ark.

34.     Halyard did not deliver on that promise.  Instead, in an effort to satisfy its sales quotas, Halyard continued to pressure Ark to place additional orders.

       c.     *Halyard's Pattern of Deception Continues:  The April and May Purchase Orders*

35.     On April 15, 2020, Halyard e-mailed Ark stating that Halyard's Latin American ("LATAM") division needed "an order in the system fast."  This request for an order, similar to the April 2, 2020 request, was made by Halyard to further boost its LATAM sales numbers to surpass its annual sales quotas.

36.     That same night, Ark e-mailed a purchase order to Halyard (the "April Purchase Order").  *See* **Composite Exhibit F**, a true and correct copy of the April 15, 2020 e-mail and April Purchase Order.

37.     On April 20, 2020, Halyard e-mailed Ark to advise that all of the Ark's purchase orders were ready to be shipped.  *See* **Exhibit G**, a true and correct copy of the April 20, 2020 e-mail.

38.     Relying on Halyard's representations and assuming Halyard would meet its obligations under the February Purchase Order and the April Purchase Order, Ark continued to submit payments to Halyard for both purchase orders.

39.     After continuing to accept these payments, Halyard's misdirection and deceitful practices persisted.

40.     On May 1, 2020, Halyard e-mailed Ark to advise that the February Purchase Order and the April Purchase Order would be consolidated into one, and that it had created a consolidated purchase order for Ark (the "May Consolidated Purchase Order").  See **Composite Exhibit H**, a true and correct copy of the May 1 Consolidated Purchase Order.

41.     However, the May Consolidated Purchase Order was not a consolidation of the prior purchase orders.  Rather, Halyard had unilaterally and significantly reduced the number of masks that Ark would receive under the February Purchase Order and the April Purchase Order. *Compare id. with* Exhibit B and Composite Exhibit F.

42.     On May 4, 2020, Halyard contacted Ark because it needed a certain type of PPE to comply with a different purchase order with a third party.  Halyard knew that Ark had a certain amount of PPE inventory.  Ark complied with the request, and shipped the PPE to Halyard.

43.     At all times material, Halyard was aware of the business relationship that Ark maintained with Pharma, and knew that Ark intended to, and was required to resell certain of the PPE derived from the purchase orders it placed with Halyard to Pharma.

    d.     *Halyard Ignores Ark's Communications*

44.     Due to Halyard's business practices, Ark was extremely concerned that Halyard would not fulfill its promises.

45.     As early as March 27, 2020, Ark's counsel sent a letter to Chuck Graves, Halyard's Director of Finance and Investor Relations, raising Ark's concerns about Halyard's actions.

46.     On April 7, 2020, Ark's counsel sent another letter to Chuck Graves, requesting a meeting.  Both of these letters were ignored.

47.     Throughout April 2020, Ark and its counsel made several phone calls to Graves and others at Halyard, leaving voicemails.  These calls were ignored.

48.     Halyard eventually understood that it could not simply ignore Ark's repeated attempts to communicate with Halyard about the unfulfilled orders, and Halyard also understood that Ark needed to reassure Pharma that Pharma would receive PPE from Ark.

49.     On May 20, 2020, Ark, Halyard, Pharma, and United Healthcare[2] participated in a conference call.  On this conference call, Halyard represented to all parties on the call that Ark's purchase orders—now consolidated, and significantly reduced—would be fulfilled.

50.     Halyard also represented to all parties on this call that Halyard was able to fulfill any new orders that Ark placed—and encouraged Ark to do so.

51.     However, despite Halyard's false representations and promises, the purchase orders were never timely and fulfilled and remain largely outstanding.

52.     Halyard's actions and omissions resulted in Ark's loss of its business relationship with LHP.

53.     Halyard's deceitful business practices with Ark were deliberate, and designed to intentionally mislead Ark so that it would continue placing purchase orders with Halyard, and so that Ark would not seek an alternative vendor to fulfill the purchase orders that Ark had placed with Halyard.  Further, Halyard led Ark to believe that Halyard was the only option Ark had to fulfill its PPE purchase orders.

54.     At all times material, Ark performed its obligations under the purchase orders, which triggered Halyard's duty to perform.  But Halyard failed to do so.

All conditions precedent to the filing of this action have been occurred, have been waived or excused, or have been performed or satisfied.

## COUNT 1—BREACH OF CONTRACT
### *(February Purchase Order)*

55.     All of Ark's allegations in the paragraphs preceding this count are realleged.

56.     Ark and Halyard entered into a contract, memorialized by the February Purchase Order.

---

[2] LHP is a procurement agent sourcing PPE goods on behalf of United Healthcare.

57.     The February Purchase Order was a result of the negotiations between Ark and Halyard, and based on Halyard's representations that it would be able to timely and fully perform under the February Purchase Order.

58.     Ark performed all of its obligations, to the extent that they existed, under the February Purchase Order.

59.     Halyard breached by not fulfilling its obligations under the February Purchase Order.

60.     As a direct and proximate result of this breach, Ark has suffered millions of dollars in damages.

WHEREFORE, Ark requests a judgment in its favor and against Halyard for all damages available to and suffered by Ark, including, without limitation, actual damages, lost profits, economic damages, consequential damages, incidental damages, and any other recoverable damages stemming from Halyard's breach, together with an award of Ark's reasonable attorney's fees and costs.

### COUNT 2—BREACH OF CONTRACT
*(April Purchase Order)*

61.     All of Ark's allegations in the paragraphs preceding Count 1 are realleged.

62.     Ark and Halyard entered into a contract, memorialized by the April Purchase Order.

63.     The April Purchase Order was a result of the negotiations between Ark and Halyard, and based on Halyard's representations that it would be able timely and fully perform under the April Purchase Order.

64.     Ark performed all of its obligations, to the extent that they existed, under the April Purchase Order.

65.     Halyard breached by not fulfilling its obligations under the February Purchase

Order.

66.     As a direct and proximate result of this breach, Ark has suffered millions of dollars in damages.

WHEREFORE, Ark requests a judgment in its favor and against Halyard for all damages available to and suffered by Ark, including, without limitation, actual damages, lost profits, economic damages, consequential damages, incidental damages, and any other recoverable damages stemming from Halyard's breach, together with an award of Ark's reasonable attorney's fees and costs.

<u>**COUNT 3—BREACH OF CONTRACT**</u>
*(May Consolidated Purchase Order)*

67.     All of Ark's allegations in the paragraphs preceding Count 1 are realleged.

68.     Ark and Halyard entered into a contract, memorialized by the May Consolidated Purchase Order.

69.     The May Consolidated Purchase Order was a result of the negotiations between Ark and Halyard, and based on Halyard's representations that it would be able timely and fully perform under the May Consolidated Purchase Order.

70.     Ark performed all of its obligations, to the extent that they existed, under May Consolidated Purchase Order.

71.     Halyard breached by not fulfilling its obligations under the May Consolidated Purchase Order.

72.     As a direct and proximate result of this breach, Ark has suffered millions of dollars in damages.

WHEREFORE, Ark requests a judgment in its favor and against Halyard for all damages available to and suffered by Ark, including, without limitation, actual damages, lost profits,

economic damages, consequential damages, incidental damages, and any other recoverable damages stemming from Halyard's breach, together with an award of Ark's reasonable attorney's fees and costs.

## COUNT 4—UNJUST ENRICHMENT
### *(in the alternative)*

73.     All of Ark's allegations in the paragraphs preceding Count 1 are realleged.

74.     Ark made several payments toward the purchase price of the goods it agreed that Halyard would deliver to Ark.

75.     Halyard accepted and retained these payments, and accepted the benefits of these payments from Ark.

76.     Halyard failed to timely and fully deliver the PPE for which it received payments from Ark.

77.     The circumstances are such that it is inequitable for Halyard to retain the benefits conferred upon it by Ark without paying fair value or just compensation for it.

78.     As a result of its actions and omissions, Halyard was unjustly enriched at Ark's expense.

79.     This unjust enrichment has caused Ark to suffer damages.

WHEREFORE, Ark requests a judgment in its favor and against Halyard for all damages available to and suffered by Ark, including, without limitation, actual damages, lost profits, economic damages, consequential damages, incidental damages, and any other recoverable damages stemming from Halyard's actions and omissions, together with an award of Ark's reasonable attorney's fees and costs.

## COUNT 5— FRAUD IN THE INDUCEMENT

80.     All of Ark's allegations in the paragraphs preceding Count 1 are realleged.

81.     Ark and Halyard entered into three contracts: the February Purchase Order, the April Purchase Order, and the May Consolidated Purchase Order (collectively, the "Contracts").

82.     In order to induce Ark into entering into these Contracts, Halyard made false statements of material fact to Ark.

83.     These statements included, among other things, Halyard's false representations that (i) it would timely and fully perform under the Contracts; (ii) the fees assessed by Halyard would result in prioritization of Halyard's performance under the Contracts; and (iii) that only Halyard could fulfill Ark's PPE needs.

84.     At the time that Halyard made these false statements to Ark, Halyard knew they were false.

85.     Relying on these and other false statements Halyard made to it, Ark placed purchase orders with Halyard, paid fees to Halyard, and did not seek alternative sources of fulfillment.

86.     As a result, Ark has suffered millions of dollars in damages.

WHEREFORE, Ark requests a judgment in its favor and against Halyard for all damages available to and suffered by Ark, including, without limitation, actual damages, lost profits, economic damages, consequential damages, incidental damages, and any other recoverable damages stemming from Halyard's actions and omissions, together with an award of Ark's reasonable attorney's fees and costs.

## COUNT 6—VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

87.     All of Ark's allegations in the paragraphs preceding Count 1 are realleged.

88.     Fla. Stat. § 501.204(1) declares unconscionable, unfair, and deceptive acts, practices, or behavior while conducting trade or engaging in commerce to be unlawful.

89.    Halyard engaged in deceptive, unfair, and unconscionable trade practices when it demanded "fees" from Ark to ensure the timely fulfillment of the Contracts that it had placed with Halyard.

90.    Indeed, Halyard demanded $55,500.00 in "fees" to secure fulfillment and prioritization of the Ark purchase orders.

91.    Under duress and threat that Halyard would not fulfill the purchase orders, Ark complied and paid the $55,500.00 in "fees" to Halyard.

92.    Despite accepting these payments, Halyard failed to fulfill the purchase orders.

93.    These deceptive, misleading, and unconscionable business practices are unethical, oppressive, and were substantially injurious to Ark and the public, to whom the goods were ultimately to be distributed.

94.    It would be unconscionable not to hold Halyard accountable for these immoral, unethical, and oppressive business practices.

WHEREFORE, Ark requests a judgment in its favor and against Halyard for all damages available to and suffered by Ark, including, without limitation, actual damages, lost profits, economic damages, consequential damages, incidental damages, and any other recoverable damages stemming from Halyard's actions and omissions, together with an award of Ark's reasonable attorney's fees and costs.

## COUNT 7—BREACH OF IMPLIED IN LAW CONTRACT

95.    All of Ark's allegations in the paragraphs preceding Count 1 are realleged.

96.    Ark made several payments toward the purchase price of the goods it agreed that Halyard would deliver to Ark.

97.    Halyard accepted and retained these payments, and accepted the benefits of these payments from Ark.

98.     Halyard also accepted the benefits of Ark placing the purchase orders to boost its sales numbers to meet its annual quotas.

99.     As a result, Halyard was unjustly enriched at Ark's expense.

100.    The circumstances are such that it is inequitable for Halyard to retain the benefits conferred upon it by Ark without paying fair value or just compensation for it.

101.    Halyard's acts and omissions have caused Ark to suffer millions of dollars in damages.

WHEREFORE, Ark requests a judgment in its favor and against Halyard for all damages available to and suffered by Ark, including, without limitation, actual damages, lost profits, economic damages, consequential damages, incidental damages, and any other recoverable damages stemming from Halyard's breaches, actions, and omissions, together with an award of Ark's reasonable attorney's fees and costs.

### COUNT 8—BREACH OF IMPLIED IN FACT CONTRACT

102.    All of Ark's allegations in the paragraphs preceding Count 1 are realleged.

103.    Valid contracts existed between Ark and Halyard for the purchase and delivery of PPE.

104.    Some or all of the contractual terms were inferred from Ark and Halyard's conduct and were not necessarily written.

105.    Halyard breached these contracts by, among other things, failing to perform its obligations under the contracts.

106.    As a result of Halyard's acts and omissions, Ark has suffered millions of dollars in damages.

WHEREFORE, Ark requests a judgment in its favor and against Halyard for all damages available to and suffered by Ark, including, without limitation, actual damages, lost profits,

economic damages, consequential damages, incidental damages, and any other recoverable damages stemming from Halyard's breach, together with an award of Ark's reasonable attorney's fees and costs.

## PRAYER FOR COSTS AND ATTORNEY FEES

Plaintiff, Ark GBST Ltd. requests an award of reasonable costs and attorney fees under Florida law and any other applicable basis for costs and attorneys based upon its claims.

## REQUEST FOR JURY TRIAL

Plaintiff, Ark GBST Ltd. requests a jury trial of all matters so triable as a matter of right.

DATED this 27th day of July, 2021.

Respectfully submitted,

**AGENTIS PLLC**
*Counsel for Plaintiff*
55 Alhambra Plaza, Suite 800
Coral Gables, Florida 33134
Tel.: 305.722.2002

By:      */s/ Christopher Spuches*
Christopher B. Spuches
Florida Bar No.: 42456
cbs@agentislaw.com
Ian M. Corp
Florida Bar No.: 1010943
imc@agentislaw.com